Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6161 | **DATE** | 7/7/2000 |
| **CASE TITLE** | Frank P. Randazzo, et al. vs. Harris Bank Palatine, N.A. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [12-1] is granted. Judgment is entered in favor of defendant Harris Bank Palatine, N.A. and against plaintiff Frank P. Randazzo. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUL 1 0 2000 date docketed | |
| ✓ | Docketing to mail notices. | | 23 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK P. RANDAZZO, AS TRUSTEE FOR FRANK P. RANDAZZO DECLARATION OF TRUST DATED JULY 18, 1997 )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HARRIS BANK PALATINE, N.A. )<br>)<br>Defendant. ) | No. 99 C 6161<br>Judge Ruben Castillo |

DOCKETED
JUL 1 0 2000

JUL 1 0 2000

## MEMORANDUM OPINION AND ORDER

Frank P. Randazzo filed this diversity action against Harris Bank Palatine alleging breach of contract and violations of the Illinois Consumer Fraud Act. Currently before the Court is the defendants' motion for summary judgment. Because there is no genuine issue as to any material fact and, under Illinois law, Harris is entitled to judgment, we grant the motion.

## RELEVANT FACTS

On April 7, 1999, Randazzo and Harris Bank entered into a series of three agreements. The agreements included a Business Loan Agreement, Collateral Pledge and Security Agreement, and a Promissory Note ("loan agreements"). The loan agreements granted Randazzo a $2.8 million revolving credit line, which was secured by Randazzo's stock in America Online, Sun Microsystems, and Cisco Systems. (R. 1, Compl. at ¶ 9.)

Randazzo, however, failed to read the terms of the loan agreements. Randazzo's failure to read the terms of the loan agreements was typical. In fact, for the past 25 years Randazzo has not read any loan agreement to which he was a party. (R. 15, Def.'s Ex. 2, Randazzo Dep. at

23

172.) According to Randazzo, "I never read any loan documents or any other documents put in front of me by a bank." (R. 15, Def.'s Ex. 2, Randazzo Dep. at 66.)

Between April 7 and August 6, 1999, the value of the stock serving as collateral for Randazzo's credit line experienced a significant decrease in value.[1] (R. 15, Def.'s Ex. 44.) Consequently, on August 6, 1999, Harris Bank asked Randazzo to reduce the loan balance or provide additional collateral. Randazzo responded that he was willing and able to satisfy the request for more collateral and sent Harris a current financial statement to verify that capability. (R. 15, Def.'s Ex. 2, Randazzo Dep. at 216.)

On August 10, 1999, after receiving Randazzo's' financial statement, Harris rejected Randazzo's offered additional collateral and refused his pending request to advance more funds. The Bank told Randazzo that it would sell the existing collateral and pay off the loan if Randazzo did not reduce the balance or provide additional acceptable collateral.[2]

Randazzo never questioned Harris' purported right to sell the existing collateral and pay off the loan. In fact, it is Randazzo's strategy to always agree with and do whatever bankers ask of him. According to Randazzo, "I never argue with a banker . . . whatever bankers want is what I give them all the time. And if I have any doubts I give them more." (R. 15, Def.'s Ex. 2, Randazzo Dep. at 135.) Accordingly, on August 10, 1999 Randazzo sold the collateral, (R. 15, Def.'s Ex. 2, Randazzo Dep. at 253), and wired the proceeds to Harris Bank, which used the money to close out Randazzo's credit line. (R. 15, Def.'s Ex. 48.) Five weeks later Randazzo

---

[1] The value of Randazzo's collateral declined from $4,491,025 to $2,597,863. (R. 15, Def.'s Ex. 42).

[2] Harris Bank disputes this version of the August 10, 1999 conversation, but given the procedural posture of the case, we accept Randazzo's account.

Page 2

filed this action alleging breach of contract and violations of the Illinois Consumer Fraud and Deceptive Practices Act.

## LEGAL STANDARDS

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party shows that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

## ANALYSIS

Randazzo filed this action alleging that Harris Bank (1) breached the terms of the loan agreements and (2) violated the Illinois Consumer Fraud Act. We analyze each claim in turn.

### I. Breach Of Contract

Randazzo claims that Harris Bank "failed to disclose to Randazzo that it had no right under the loan agreements to demand additional collateral, to liquidate his stocks, or to terminate his credit line," and "misrepresented to Randazzo that it was entitled to sell his collateral." (R. 1, Compl. at ¶ 20). The crux of Randazzo's complaint is that Harris Bank led Randazzo to falsely believe that it had the power to sell his stock under the terms of the loan agreements.

Illinois courts long ago established the voluntary payment doctrine. *See Getto v. City of Chicago*, 426 N.E.2d 844, 849 (Ill. 1981); *Edward P. Allison Co. v. Village of Dolton*, 181 N.E.2d 151, 153 (Ill. 1962); *Illinois Glass Co. v. Chicago Telephone Co.*, 85 N.E. 200, 201 (Ill.

1908). Under that doctrine, a plaintiff who voluntarily pays money under an incorrect or illegal claim of right cannot recover the payment absent fraud, coercion, or mistake of fact. *Dreyfus v. Ameritech Mobile Communications, Inc.*, 700 N.E.2d 162, 165 (Ill. App. Ct. 1998); *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1329-30 (Ill. App. Ct. 1995). The doctrine applies here because, according to Randazzo, Harris Bank falsely claimed that the loan agreements gave it the right to call Randazzo's collateral, and Randazzo paid the Bank because of that representation. Thus, to survive summary judgment on his contract claim Randazzo, must produce evidence showing that he paid because of fraud, coercion, or a mistake of fact.

A misrepresentation regarding the terms of a written instrument is insufficient, as a matter of law, to establish fraud or a mistake of fact. *Jursich v. Arlington Heights Fed. Sav. & Loan Assoc.*, 441 N.E.2d 864, 867 (Ill. App. Ct. 1982). This is true because a party who has access to a written instrument cannot reasonably rely on representations of other contracting parties respecting the effect of the written instrument. *See Russell v. Hertz Corp.*, 487 N.E.2d 630, 635 (App. Ct. Ill. 1985) ("Regardless of the precise errors complained of, [under the voluntary payment doctrine] when plaintiffs have sufficient information . . . they must protest or show that they paid under duress."); *Jursich*, 441 N.E.2d at 867 (parties who rely on the representations of another contracting party about the legal effect of a written instrument do so "at their own peril"). Furthermore, the Seventh Circuit has made it strikingly clear that it will not reward parties for their failure to read what they sign. *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990) ("If [plaintiffs] make a practice of signing contracts without reading them, they must bear the consequences."); *see also Pace Communications, Inc., v. Moonlight Designs, Inc.* 31 F.3d 587, 592 (7th Cir. 1994).

Page 4

Randazzo fails to produce evidence from which a reasonable jury could conclude that the sale of collateral was due to fraud or a mistake of fact. Randazzo alleges that Harris misrepresented its rights under the terms of the loan agreements. However, as in *Jursich*, Randazzo had access to the loan agreements and, instead of reading them, chose to rely on the Harris' representations respecting the effect of the written instrument. Randazzo's acceptance of Harris' allegedly false construction of the loan agreements was at his own peril. Therefore, the Bank's representation to Randazzo concerning the terms of the loan agreements cannot satisfy the mistake of fact or fraud exception to the voluntary payment doctrine.

Thus Randazzo must show that the Bank's misrepresentation about its right to sell the collateral constituted coercion, as Illinois defines that term. Under Illinois law, a payment is considered coerced only where it is made to avoid the loss of a necessity, or to prevent an injury to a person, business or property which is different and disproportionately greater than the unlawful demand. *Dreyfus*, 700 N.E.2d at 165-66. "Such pressure must be brought to bear upon the person paying as to interfere with free enjoyment of his rights of person or property and the compulsion must furnish the motive for the payment sought to be avoided." *Prime Cable*, 658 N.E.2d at 1330 (quoting *Illinois Glass Co.*, 85 N.E. at 201).

Randazzo does not produce evidence from which a reasonable jury could conclude that Harris Bank coerced him into selling the stock. Randazzo's stock is no more a necessity than the money it represented. Randazzo's sale of stock involved only the loss of proceeds, not the loss of a necessity. Likewise, he has produced no facts establishing that the alleged loss of proceeds resulting from his sale of the stock was legally different or disproportionately greater than the loss would have been under the Bank's purportedly unlawful demand.

Page 5

Randazzo's reliance on *Edward P. Allison Co. v. Village of Dolton*, 181 N.E.2d 151 (Ill. 1962), and *Schlossberg v. E.L. Trendel & Assoc., Inc.*, 380 N.E.2d 950 (Ill. App. Ct. 1978) is unavailing. Both cases are distinguishable from the present case. In *Village of Dolton* and *Schlossberg* the plaintiffs, had they not acceded to the defendants demands, would have been deprived of their livelihoods and suffered far greater losses than if they had not paid. *Village of Dolton*, 181 N.E.2d at 153 (the Village illegally demanded fees from an electrical contractor and threatened severe penalties and contract cancellation if the fees were not paid); *Schlossberg*, 380 N.E.2d at 951-52 (seller of property withheld title transfer to purchaser, which had already contracted to resell the property, absent payment of additional money to which it was not entitled under contract; purchaser paid money under protest in order to avoid the loss of its sale and a damages action by the third party); *see also Russell*, 487 N.E.2d at 635 ("It is true that disastrous business consequences qualify as duress. If a plaintiff will suffer a virtual destruction of business as a result of his failure to pay an illegal sum, then his payment is compulsory.").

The plaintiffs in *Village of Dolton* and *Schlossberg* adequately established coercion by showing a business loss substantively different and far harsher than the unjustified payments demanded by the defendants. Randazzo has not made a similar showing. He has not alleged, much less produced facts, showing a disproportionately greater harm that he avoided by acquiescing to Harris Bank's payment demand. Instead he claims, with no evidentiary support, that he saved unspecified commission fees by selling the stock himself. These vague assertions are insufficient to establish a triable issue that Harris Bank coerced his stock sale.

Randazzo has failed to raise a genuine issue that his payment to Harris resulted from fraud, coercion, or a mistake of fact. Instead, the record shows that Randazzo quietly acquiesced

Page 6

to Harris' demand because he didn't read the contract and, because he didn't read the contract, he believed Harris' statement that it had a legal right under the contract to call the collateral. A mistake of law does not excuse a voluntary payment. *Prime Cable*, 658 N.E.2d at 1330 ("[M]onies paid under a claim of right but under a mistake of law are not recoverable."). Thus, under the voluntary payment doctrine, Randazzo cannot recover the money he paid to Harris Bank. For this reason, we grant summary judgment to Harris on Randazzo's breach of contract claim.[3]

## II. Consumer Fraud Act

Randazzo next alleges that Harris Bank violated the Illinois Consumer Fraud and Deceptive Practices Act. 815 ILCS § 505/1 *et seq.* According to Harris Bank, Randazzo lacks standing to bring a Consumer Fraud Act Claim. Harris also argues that, even if Randazzo has standing, he fails to state a claim under that statute.

As to the standing issue, the statute defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for use or that of a member of his household." 815 ILCS § 505/1(e). The definition of "person" includes trusts and trustees. 815 ILCS § 505/1(c). The determinative issue, however, is whether the circumstances surrounding Randazzo's stock sale are within the scope of his "purchase" as that term is used in the Act.

---

[3] As this case is decided under the voluntary payment doctrine, we need not address Harris' remaining defense that Randazzo did not perform his obligations under the contract.

Illinois courts liberally construe the Consumer Fraud Act and give broad definition to consumer. *See Law Offices of William J. Stogsdill v. Cragin Fed. Bank*, 645 N.E.2d 564, 565 (Ill. App. Ct. 1995). And, in fact, it is clear that the Consumer Fraud Act protects purchasers of banking services. *See id.* at 566-67 (and cases cited therein). Additionally, Randazzo's stock sale occurred during the course of his business relationship (his purchase of banking services) with Harris Bank. Therefore, we conclude that Randazzo has standing under the Consumer Fraud Act.[4]

This conclusion, however, is as far as Randazzo gets because, ultimately, he fails to state a claim cognizable under the Act. At a minimum, the Consumer Fraud Act requires a misrepresentation of fact. Here, Harris' alleged misrepresentations were not of facts. *See Harris Trust & Sav. Bank v. Great-West Life Assurance Co.*, No. 87 C 10674, 1989 WL 117984, at *5 (N.D. Ill. 1989) (a party's interpretation of a document, whether correct or not, cannot be a representation of a material fact, but rather is merely that party's personal opinion as to the legal effect of the document). An assertion of rights under a contract is not a factual representation at all; instead, it is an assertion regarding the legal effect of the agreement. *Harris Trust*, 1989 WL 117984, at *5. As in *Harris Trust*, the Bank's misrepresentations to Randazzo were not of material facts. Therefore, Randazzo fails to state a claim under the Consumer Fraud Act.

Furthermore, Randazzo has failed to produce evidence of a deceptive practice, a requirement under the Act. *Cripe v. Leiter*, 703 N.E.2d 100, 103 (Ill. 1998) (stating that the first

---

[4] The courts in this district are split on the issue whether a non-Illinois resident, like Randazzo, can maintain an action under the Consumer Fraud Act. *See Peters v. Northern Trust Co.*, No. 92 C 1647, 1999 WL 515481, at *13 (N.D. Ill. July 15, 1999) (collecting cases). Harris Bank does not raise the issue. In any event, we need not take a position on the issue, however, because as explained in the text Randazzo fails to state a claim under the Act.

element of a Consumer Fraud Act claim is "a deceptive act or practice by the defendant."); *see also Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1996) (same). The terms and legal effect of a contract are not concealed facts and openly taking a position on the interpretation of legal documents, even if erroneous, is not a deception or a deceptive trade practice. *See Notaro Homes Inc. v. Chicago Title Ins. Co.*, 722 N.E.2d 208, 217 (Ill App. Ct. 2000) ("[A] deceptive representation or omission of law does not constitute a violation of the [Consumer Fraud] Act because both parties are presumed to be equally capable of knowing and interpreting the law."); *Bankier v. First Fed. Sav. & Loan Assoc.*, 588 N.E.2d 391, 398 (Ill. App. Ct. 1992) ("Here, [the parties] merely disagree on the interpretation of a contract between them. . . . Since this is a simple breach of contract dispute, the [Consumer Fraud] Act does not apply.").

Because Randazzo has failed to produce evidence that Harris either misrepresented material facts or engaged in a deceptive practice, we grant Harris summary judgment on Randazzo's Consumer Fraud Act claim.

## CONCLUSION

For these reasons, this Court grants summary judgment for Harris and against Randazzo. (R. 12-1.) The Clerk of Court is instructed to enter final judgment pursuant to Federal Rule of Civil Procedure 58 in accordance with this opinion.

ENTERED:

Judge Ruben Castillo
United States District Court

July 7, 2000